**EDELSBERG LAW, P.A**
Scott Edelsberg
(Cal. Bar No. 330990)
1925 Century Park E., #1700
Los Angeles, CA 90067
E: Scott@Edelsberglaw.com
T: 310-438-5355

*Attorneys for Plaintiff and Proposed Class*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARON PIZARRO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>QUINSTREET, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §§ 227, *ET SEQ*. (TCPA)**<br><br>**JURY TRIAL DEMANDED** |

# CLASS ACTION COMPLAINT

1. Plaintiff, Sharon Pizarro, brings this action against Defendant, Quinstreet, Inc., to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

# NATURE OF THE ACTION

2. This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.* (the "TCPA").

3. Utilizing its website, www.amone.com, Defendant harvests consumer lead information and telephone numbers by promising quotes for loans to purchase boats and cars, home improvement loans, and loans for other consumer goods.

4. In reality, however, Defendant is not a lender but a marketing company that sells consumer contact information to lenders and even receives referral fees from lenders for doing so.

5. The form Defendant uses on its website to collect phone numbers includes an orange button which states "See My Rates" as shown below:

6. But there are no "Rates" on Defendant's website. Defendant acquires consumers' contact information and sells it to lenders.

7. As part of its efforts to market itself and its clients, Defendant also uses prerecorded messages without first obtaining the required express written consent.

8. Plaintiff was one such target of Defendant's unsolicited robocalls.

9. Through this action, Plaintiff seeks injunctive relief to halt Defendant's unlawful conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of Plaintiff and members of the Class, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

10. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq*. ("TCPA").

11. The Court has general jurisdiction over Defendant and venue is proper in this District because Defendant resides in this District in Foster City, California.

## PARTIES

12. Plaintiff is a natural person who, at all times relevant to this action, was a resident of Westchester County, New York.

13. Defendant is a California corporation whose principal office is located at 950 Tower Lane 6th Floor, Foster City, CA 94404. Defendant directs, markets, and provides its business activities throughout the United States, including throughout the state of California.

14. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Defendant.

## THE TCPA

15. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system or an artificial or prerecorded voice; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

16. The TCPA exists to prevent communications like the ones described within this Complaint. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

17. In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

18. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

19. In 2012, the FCC issued an order further restricting automated <u>telemarketing</u> calls, requiring "prior express <u>written</u> consent" for such calls. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

## FACTS

20. On or about November 13, 2021, Defendant caused a prerecorded voice message to be transmitted to Plaintiff's cellular telephone number ending in 5392 ("5392 Number") from the telephone number 914-202-4574.

21. The prerecorded messages included a prerecorded voice which identified itself as calling from "Amone" and asked Plaintiff to call Defendant back at "855-211-2530". The message said that the caller would like to "help" with Plaintiff's "financial situation".

22. At the time Plaintiff received these prerecorded voice messages Plaintiff was the subscriber and/or sole user of the 5392 Number.

23. Defendant's prerecorded message calls constitute telemarketing/advertising because their purpose was to promote Defendant's business, goods and services.

24. Upon information and belief, Defendant caused similar prerecorded messages to be sent to individuals residing within this judicial district using the names of AmOne and/or GuideToLenders.

25. Plaintiff is not the only person who has received prerecorded messages from Defendant using the names AmOne and GuideToLenders as shown below:

[1]

---

[1] directory.youmail.com/directory/phone/5619480629



---

[2] directory.youmail.com/directory/phone/8552112530

> **855-211-2530**
>
> **BALTIMORE JOE**
> 17 Feb 2015
>
> Home Depot calling to see if need windows through a company called Quinstreet.
>
> Caller: Quinstreet/HOme Depot
> Call type: Telemarketer
>
> **fedup**
> 12 Jun 2015
>
> I wish this people leave messages, they keep calling but do not leave any messages. VERY annoying. idiots..
>
> Call type: Telemarketer
>
> **S**
> 2 Aug 2019 | 1 reply
>
> Called yesterday and today. Claims to be Geico about a real estate loan.
>
> Caller: Claims to be Geico
> Call type: Scam suspicion
>
> [3]
>
> **SIR** replies to **S**
> 25 Oct 2019
>
> I too got a call from this number claiming to be Geico, about a loan, I thought they only did insurance
>
> **Dallas**
> 29 Oct 2019
>
> They left a message and said "This is Guide to Lenders" wanted me to call back cause they can get me a loan.
>
> Caller: 8552112530
> Call type: Scam suspicion
>
> [4]

---

[3] 800notes.com/Phone.aspx/1-855-211-2530
[4] *Id.*

<s>CLASS ACTION COMPLAINT</s>
<s>7</s>

26. At no point in time did Plaintiff provide Defendant with her prior express written consent to be contacted for marketing purposes by prerecorded messages from Defendant.

27. The form that Defendant uses to collect telephone numbers from consumers is depicted below (the "Amone Form"):

**Last step to get your quotes**

Phone
PHONE ( )

EMAIL

We encrypt your information using 256 SSL technology.

**See My Rates**

By clicking See My Rates, you agree to the following:

To AmOne's Privacy Notice, Terms of Use, and Consent to Receive Electronic Communications

To share my information with up to five potential callers, lenders, or debt relief partners, for AmOne, and for them and/or AmOne to contact you (including by automated dialing systems, prerecorded messages and text) for marketing purposes by telephone, mobile device (including SMS and MMS), and/or email, even if you are on a corporate, state or national Do Not Call list. Consent is not required in order to purchase goods and services and you may choose instead to contact a customer care representative at 1-800-781-5187.

You authorize AmOne to obtain your credit report and Social Security Number from a credit bureau to verify your identity and match you with up to five lenders or debt relief providers. You further authorize AmOne to provide to these lenders your full Social Security. You further authorize these lenders separately to obtain your consumer credit report, credit score, and other information from one or more consumer reporting agencies to verify your identity and provide you with quotes.

28. As demonstrated by the above, the disclosure in the Amone Form "is the antithesis of conspicuous. It is printed in a tiny gray font considerably smaller than the font used in the surrounding website elements, and indeed in a font so small that it is barely legible to the naked eye. The comparatively larger font used in all of the surrounding text naturally directs the user's attention everywhere else. And the textual notice is further deemphasized by the overall design of the webpage, in which other visual elements draw the user's attention away from the barely readable critical text." *See Berman v. Freedom Fin. Network, LLC*, No. 20-16900, 2022 U.S. App. LEXIS 9083, at *15 (9th Cir. Apr. 5, 2022)

29. Moreover, Defendant forces consumers to provide their telephone numbers when completing the Amone Form.

30. Defendant obscures its intention to send the consumer prerecorded marketing calls in small grey font underneath the big orange "See My Rates" button.

31. The Amone Form also collects phone numbers under false pretense as shown by its use of large blue sentence at the top of the form which states "Last step to get your quotes" and the use of a "See My Rates" button at the bottom which when clicked does not provide the user with any actual interest rates or loan offers.

32. Instead, when the "See My Rates" button is clicked, the user is taken to the two following screens – neither of which provide actual interest rates or loan offers:




33. Actual interest rates are not provided by Defendant because Defendant is not a lender but a referral source to lenders from which it may receive a referral fee.

34. Also concealed below the orange "See My Rates" button is a small Terms of Use hyperlink which while underlined is not the typical blue color (or any contrasting color at all) which would signify to a user that it is a hyperlink. It also does not use all capital letters which could alert a user that this particular text differs from other plain text in that it provides a clickable pathway to another webpage. Additionally, the font used is also considerably smaller than the font used in the surrounding website elements as shown again below:



35.     If the Terms of Use button is clicked, the user is taken to a completely different website page which contains an arbitration agreement. But nowhere in the Amone Form is arbitration ever mentioned. Nor is assent to the Terms of Use or arbitration mentioned within the orange "See My Rates" button. There is also no box to check or button to click which would unambiguously manifest a user's assent to the Terms of Use or the arbitration agreement.

36.     As arbitration is not mentioned anywhere on the Amone Form there can be no question that Plaintiff had no actual knowledge of the arbitration agreement.

37. Furthermore, the design and writing of the Amone Form cannot provide reasonably conspicuous notice of the terms to which a consumer is bound including the arbitration agreement.

38. Defendant's unsolicited prerecorded message caused Plaintiff additional harm, including invasion of privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's call also inconvenienced Plaintiff and caused disruption to Plaintiff's daily life.

## CLASS ALLEGATIONS

### PROPOSED CLASS

39. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and all others similarly situated.

40. Plaintiff brings this case on behalf of the Class defined as follows:

**NO CONSENT CLASS**: All persons in the United States who, within four years prior to the filing of this action, (1) Defendant placed a call using a prerecorded or artificial voice message (2) regarding property, goods, and/or services.

41. Plaintiff reserves the right to modify the Class definitions as warranted as facts are learned in further investigation and discovery.

42. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

### NUMEROSITY

43. Upon information and belief, Defendant has placed automated calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

44. The exact number and identities of the members of the Class are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

**COMMON QUESTIONS OF LAW AND FACT**

45. There are numerous questions of law and fact common to members of the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the members of the Class are:

   a. Whether Defendant made non-emergency calls to Plaintiff's and Class members' telephones using a prerecorded message;
   b. Whether Defendant can meet its burden of showing that it obtained prior express written consent to make such calls;
   c. Whether Defendant's conduct was knowing and willful;
   d. Whether Defendant is liable for damages, and the amount of such damages; and
   e. Whether Defendant should be enjoined from such conduct in the future.

46. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits calls to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

47. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

48. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

**PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE**

49. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

50. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227(b) and § 64.1200(a)**
**(On Behalf of Plaintiff and the Class)**

51. Plaintiff re-alleges and incorporates the foregoing allegations set forth in paragraphs 1 through 36 as if fully set forth herein.

52. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any …artificial or prerecorded voice to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

53. It is a violation of the TCPA regulations promulgated by the FCC to "initiate any telephone call…using an… artificial or prerecorded voice to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 C.F.R. § 64.1200(a)(1)(iii).

54. It is a violation of the TCPA regulations promulgated by the FCC to "initiate any telephone call to any residential line using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party". 47 C.F.R. § 64.1200(a)(3).

55. It is a violation of the TCPA to "initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party…." 47 U.S.C. § 227(b)(1)(B).

56. Additionally, it is a violation of the TCPA regulations promulgated by the FCC to "[i]nitiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, …artificial or prerecorded voice …other than a call made with the prior express written consent of the called party or the prior express consent of the called party when the call is made…" 47 C.F.R. § 64.1200(a)(2).

57. Defendant used artificial and/or prerecorded voice messages to make non-emergency telephone calls to the telephones of Plaintiff and other members of the Class.

58. Defendant did not have prior express written consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made and/or failed to honor opt-out requests regarding its prerecorded solicitations.

59. Defendant has, therefore, violated §§ 227(b) and 64.1200(a) by using artificial and/or prerecorded voice messages to make non-emergency telephone calls to the telephones of Plaintiff and the other members of the putative Class without their consent.

60. Defendant knew that it did not have consent to make these calls, and knew or should have known that it was using prerecorded messages. The violations were therefore willful or knowing.

61. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the members of the Class are also entitled to an injunction against future calls. *Id*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiff as the representative of the Class and Plaintiff's counsel as Class Counsel;

b) An award of actual and statutory damages for Plaintiff and each member of the Class;

    c) As a result of Defendant's negligent violations of 47 U.S.C. §§ 227, *et seq.*, and 47 C.F.R. § 64.1200, Plaintiff seeks for Plaintiff and each member of the Class $500.00 in statutory damages for each and every violation pursuant to 47 U.S.C. § 227(b)(3).

    d) As a result of Defendant's knowing and/or willful violations of 47 U.S.C. §§ 227, *et seq.*, and 47 C.F.R. § 64.1200, Plaintiff seeks for Plaintiff and each member of the Class treble damages, as provided by statute, up to $1,500.00 for each and every violation pursuant to 47 U.S.C. § 227(b)(3).

    e) An order declaring that Defendant's actions, as set out above, violate the TCPA;

    f) An injunction requiring Defendant to cease all unsolicited call activity without obtaining consent first and to otherwise protect the interests of the Class;

    g) Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with Defendant and the calls as alleged herein.

Respectfully submitted,

Dated: May 12, 2022

                    **EDELSBERG LAW, P.A**

                    <u>/s/Scott Edelsberg</u>
Scott Edelsberg
(Cal. Bar No. 330990)
1925 Century Park E., #1700
Los Angeles, CA 90067
E: Scott@Edelsberglaw.com
T: 310-438-5355

*Attorneys for Plaintiff and the Proposed Class*